IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LEESON TAYLOR                                                                          PLAINTIFF

VS.                                        CIVIL ACTION NUMBER 4:18-cv-093 MPM-JMV

GREENVILLE PUBLIC SCHOOL DISTRICT AND
DR. LORETTA SHANNON,
KIMBERLY MERCHANT,
JAN VAUGHN, SHIRLEY CARTLIDGE AND
BETSY ALEXANDER, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE
GREENVILLE PUBLIC SCHOOL DISTRICT                              DEFENDANTS

## ORDER

This cause comes before the court on the motion of defendants Greenville Public School District *et al* for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Leeson Taylor has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that it should dismiss plaintiff's federal claims and that it should decline to exercise supplemental jurisdiction over his remaining state law claims.

This is a wrongful termination case brought by plaintiff Taylor, who is the former superintendent of the Greenville Public School District. Taylor was fired by the Board of Trustees of the School District (hereinafter "the Board") on December 2, 2016, following a ninety-minute hearing which had been held three days earlier. The Board cited two primary reasons for firing plaintiff, namely 1) the manner in which he handled the investigation and discipline of a teacher who struck a special education student, and 2) the "F" rating the Greenville Public School District received from the Mississippi Department of Education for the 2015-2016 school year. The incident involving the striking of the student had caused a great

1

deal of outrage in the community, and the Board contends that plaintiff did not adequately convey the seriousness of the incident to it, prior to a video of it "going viral."

On October 10, 2016, the Board held a meeting to discuss the incident and plaintiff's reaction to it. Three days later, the Board held another meeting, at which it decided to place plaintiff on administrative leave with pay as a means of facilitating its own investigation into the matter. On October 17, 2016, the Board met yet again to discuss the incident, and it hired Tonya Franklin, a local Greenville attorney, to conduct an independent investigation. On October 24, 2016, the Board received Franklin's initial report on the results of her investigation. After reviewing the report, the Board submitted follow-up questions to Franklin, who made a supplemental and a second supplemental report. On November 1, 2016 the Board president, Dr. Loretta Shannon, sent Taylor a notice of termination letter. This letter spelled out the grounds for his termination and advised him of his right to appeal it. Plaintiff did, in fact, appeal his firing, and the Board held a ninety-minute hearing on that appeal on November 29, 2016. On December 2, 2016, Taylor was sent a copy of the Board's final decision upholding his termination. Feeling aggrieved, plaintiff filed a wrongful termination action in state court, asserting both state and federal claims. Defendants timely removed the case to federal court. Defendants have presently moved for summary judgment, arguing that no genuine issue of fact exists regarding their potential liability in this case and that they are entitled to judgment as a matter of law.

In addressing the summary judgment motion, this court will first consider plaintiff's federal law claims, since it is these claims which provide the jurisdictional basis for this lawsuit. In asserting that his termination violated federal law, plaintiff relies primarily upon an argument that the termination hearing which he was granted did not comply with the procedural due

process requirements of the Fourteenth Amendment to the U.S. Constitution. In his summary judgment brief, however, plaintiff fails to address many of the arguments which defendants set forth in their own summary judgment briefing. Defendants argue, and this court agrees, that to the extent that plaintiff failed to address the arguments which they raised in their briefing, those arguments are properly considered to be conceded.

The limited arguments which plaintiff does offer on his due process claims relate primarily to his contention that he was denied the public hearing to which, he contends, he was entitled under the "liberty" provision of the Fourteenth Amendment's due process clause. In particular, plaintiff contends that the charges against him were so stigmatizing that they entitled him to a public "name clearing" hearing. It is well settled that termination by a public employer may implicate a liberty interest in circumstances "where a person's good name, reputation, honor, or integrity is at stake" or that will impose a "stigma that [will foreclose] freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).

This court concludes that multiple deficiencies exist with regard to plaintiff's liberty interest claim, relating both to his basic right to a "name clearing hearing" and also to his failure to specifically request a public hearing. In their brief, defendants correctly note that, in the Fifth Circuit, courts employ a seven-element 'stigma-plus-infringement' test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without an opportunity to clear his name. *Bledsoe v. City of Horn Lake, Miss.,* 449 F.3d 650, 653 (5th Cir. 2006). The plaintiff must show that: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an

opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request." *Id.*

In their brief, defendants offer extensive arguments and authorities relating to the second element of the "stigma plus" test, arguing that the charges against plaintiff were not sufficiently stigmatizing to even raise the possibility of a liberty interest claim. Specifically, defendants write in their brief that:

> As a threshold matter, Plaintiff's proof must create a genuine issue of fact that the charges implicated a "liberty interest." However, the charges herein in Taylor's November 1, 2016 Notice of Termination letter did not implicate a liberty interest. They concern matters of inadequate job performance, lack of professional judgment, and poor leadership. They are not sufficiently stigmatizing to trigger a liberty interest. *Ball v. Bd. of Trustees of Kerrville Indep. Sch. Dist.,* 584 F.2d 684, 685 (5th Cir. 1978); *see also Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 256 and n.16 (5th Cir. 1984) ("that for a charge to be stigmatizing, it must be worse than adverse").
> Other Courts in the Fifth Circuit have noted that accusations of exercising "poor judgment," or failing to report are not sufficiently stigmatizing to implicate a liberty interest. *Vander Zee v. Reno,* 73 F.3d 1365, 1369 (5th Cir. 1996) (statement that plaintiff exercised "poor judgment" was not sufficiently condemnatory to satisfy the stigma prong of the test); *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (newspaper article containing adverse comments on plaintiff's qualifications and attitude insufficient); *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir. 1994) (charge of "incompetence" and sloppy work insufficient); *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989) (public statement that plaintiff lacked qualifications was insufficient); *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (rating of honesty as "unsatisfactory" insufficient); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976) (incompetence and inability to get along with co-workers in a professional manner insufficient). Taylor admitted that what he contended made the statements or charges "stigmatizing" was that "they put forth in the community that I had failed to perform by functions as superintendent." (Exh. 1, Pl. Dep. 110). These kinds of statements are not sufficiently stigmatizing to implicate any liberty interest Taylor may have had.

[Defendants' brief at 16-17].

This court finds defendants' arguments in this regard to be persuasive, and it does not believe that plaintiff has made even a good faith effort to rebut them. In finding defendants' arguments to be well taken, this court emphasizes that, on some level, virtually *every* termination

4

for cause is stigmatizing and harmful to an individual's career prospects, at least to some degree. That is, a finding by an employer that an employee did not perform his job duties in a competent manner is one which would tend to make a future employer less likely to hire him. As noted in defendants' authorities quoted above, however, the Fifth Circuit has held that, to support a "liberty interest" claim, much more is required than simply a contention that an employee failed to perform his job duties properly. In *Ball*, for example, the Fifth Circuit wrote that "[a] due process claim for violation of a 'liberty interest' entitling [plaintiff] to a full hearing would arise if and only if the reason given or the dismissal procedure adopted resulted in a 'badge of infamy,' public scorn, or the like." *Ball*, 584 F.2d at 685, *citing Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Similarly, the Fifth Circuit has written that "[a] liberty interest arises . . . when one is publicly subjected to a badge of infamy, such as being 'posted' as a drunkard." *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978) *citing Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

This court regards *Dennis*' example of an employee being fired for being a "drunkard" as illustrative, since it demonstrates the sort of allegations which might genuinely place a "badge of infamy" on an employee and seriously damage his standing in the community. In so stating, this court notes parenthetically that it recently permitted a liberty interest claim to go before a jury in a case in which the plaintiff was alleged to have posted a nude photograph of himself on a website dedicated to individuals seeking to have extra-marital affairs. *Wallace v. Desoto County School District*, No. 3:16CV287 (N.D. Miss. 2018). While this court has thus been receptive to liberty interest claims in appropriate cases, it does not believe that the charges against plaintiff in this case rise to that level, and plaintiff has offered no arguments in his brief suggesting that they do.

> In his brief, plaintiff writes that:
>
> > Plaintiff was terminated simply because he did not terminate Linda Winters - Johnson, a certain special education teacher who struck and dragged a special education student across the gymnasium floor on the "Greenville Campus" of Greenville High School on the afternoon of September 21, 2016. Plaintiff avers that Defendants' assertion that he was terminated because the Greenville Public School District received a "F" rating from the Mississippi Department Of Education for the 2015 - 2016 school year was pretext.
>
> [Plaintiff's brief at 2]. In a different section of his brief, plaintiff writes that:
>
> > That as a result of Plaintiff's termination, he was stigmatized by the comments made by Defendants. As opposed to Defendants saying "no comment ..... this is a personnel matter" Defendants stated that he (i.e. Plaintiff) failed to notify them of the alleged incident and that he failed to report the alleged incident to the Mississippi Department Of Education. (See Exhibit 1, page 111, lines 1 - 18). As a result of the "stigma", Plaintiff has not been able to secure employment. That the position of superintendent of education carries with it broad based respect in the community in general and the education community specifically. Thus, when a superintendent is falsely accused and / or terminated, as he was, it causes and will continue to cause serious, severe and irreparable harm and will stigmatize him for the rest of his career in education.
>
> [Plaintiff's brief at 7].

Plaintiff thus asserts that he was stigmatized by the allegation that he failed to "notify [defendants and the Mississippi Department of Education] of the alleged incident." While the above quotation is not set forth in the portion of plaintiff's brief dealing with his liberty interest claim, it appears to constitute his present position regarding the stigma issue. This court notes that, in his deposition, plaintiff testified that what made the charges "stigmatizing" was that "they put forth in the community that I had failed to perform my functions as superintendent." (Exh. 1, Pl. Dep. 110). In the court's view, however, neither of these charges are sufficiently stigmatizing to give rise to a liberty interest claim under the Fourteenth Amendment. In the court's view, an allegation that an employee failed to properly notify relevant authorities of misconduct committed by someone else, or that he had generally failed to perform his job duties in a

competent manner, do not represent the sort of charges which would constitute a "badge of infamy" in the community.

In their brief, defendants submit extensive excerpts from local news reports regarding the Winters-Johnson incident, arguing that none of these reports include scandalous or stigmatizing accusations against Taylor. Defendants have likewise presented proof that, after his termination, plaintiff secured employment with an entity known as "The School Turnaround Group" at a salary of $150,000/year. [Defendants' brief at 14]. Defendants argue that this proof casts doubt upon plaintiff's contention that he was so stigmatized by his firing that he lost the "liberty" to pursue his career as an educator. Plaintiff has not even attempted to dispute defendants' characterization of the evidence in this regard, and this court therefore regards these arguments as having been conceded. Certainly, if a false charge had been made public that plaintiff himself had struck a special education student, then this court believes that this would likely give rise to a liberty interest claim. There is no suggestion that such occurred here, however. This court therefore concludes that plaintiff's liberty interest claim fails based on his failure to demonstrate that the charges against him were sufficiently "stigmatizing" within the meaning of Fifth Circuit precedent.

This court now turns to a second, independently sufficient, basis for dismissing plaintiff's liberty interest claim, namely his failure to request a public hearing at which he could clear his name. Plaintiff sought a hearing in a letter from counsel dated November 3, 2016, in which he specifically requested a hearing an accordance with "paragraph 7 of the Contract of Employment." [Def. exh. 23]. In his brief, plaintiff likewise asserts that he "requested a hearing in accordance with the terms of his contract with Defendants." [Plaintiff's brief at 15]. It is thus undisputed that plaintiff requested a hearing in accordance with paragraph 7 of his contract, and,

crucially, that paragraph includes no requirement that the hearing be public. To the contrary, paragraph 7 merely requires that the hearing "be conducted in such manner so as to afford the Superintendent a fair and reasonable opportunity to present evidence pertinent to the issues." [Exh. 23 at 4]. It thus seems clear that plaintiff's contract, upon which he expressly based his request for a hearing, was concerned with ensuing a fair presentation of the evidence and *not* a public hearing at which to clear his name.

In their brief, defendants argue that plaintiff's counsel did not object when told that the hearing would not be public, writing that:

> Before the hearing began on November 29, Taylor was advised that the Board was going to ". . . allow you at least one and one-half hours" for his presentation. Taylor's counsel also acknowledged that the hearing was going to be in executive session and the public would not be allowed to attend because the hearing addressed a "personnel issue." (Exh. 25). Taylor's counsel did not object to the hearing going forward in executive session but simply responded, "Okay, are you ready?" and the hearing began immediately thereafter. Counsel then proceeded with his argument and called two witnesses. In addition, Taylor was allowed to speak on his own behalf and to "tell his side of the story."

[Defendants' brief at 7-8]. Plaintiff has not attempted to contest defendants' characterization of the record in this context, and this court therefore regards it as having been conceded. The Fifth Circuit has made it clear that while "an employee need not use the term 'name-clearing hearing' to satisfy the sixth element of the stigma-plus-infringement test, the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name." *Bledsoe,* 449 F.3d at 653. In light of the request made by plaintiff's counsel, and his statements at the hearing, this court can discern no reasonable argument that he requested a public hearing in this case. This constitutes a second, independently sufficient, reason why plaintiff's liberty interest claim lacks merit, and that claim will therefore be dismissed.

This court now turns to plaintiff's procedural due process "property" interest claim, as to which he offers even scanter arguments and authorities than with regard to his liberty interest

8

claim. It is undisputed that plaintiff did, in fact, have a property interest in his position as superintendent, but, unlike with liberty interest-based "name clearing" hearings, there is no legal requirement that property interest-based claims be held publicly. This leaves plaintiff in the difficult position of having to point out some other manner in which the ninety-minute hearing he was given was constitutionally deficient. Plaintiff has failed to do so. Indeed, plaintiff's argument on this issue consists almost entirely of a contention that his hearing was deficient because the Board which heard his appeal was the same one which recommended his termination.

> Specifically, plaintiff writes in his brief that:
>
> Plaintiff had a protected interest in his employment with Defendants. Plaintiff avers that the procedures that were relative to his termination were constitutionally deficient. Plaintiff's right to a full hearing must consist of a meaningful opportunity to be heard before a tribunal that possess some expertise and an apparent impartiality toward the charges. *McMullen v. Starkville Oktibbeha Consolidated Sch.,* 200 F. Supp. 3d 649 ( 2016 )(*Citing Wells v. Dallas Indep. Sch. Dist.,* 793 F. 2d 679(1986 )). In the instant civil action, Plaintiff's hearing was before a tribunal that lacked impartiality as it was the very tribunal that was recommending his termination. As in *McMullen,* the record, in the instant civil action is devoid of any evidence that Plaintiff had an opportunity to be heard before an independent tribunal.

[Plaintiff's brief at 17-18]. While certain other sections of plaintiff's brief contain brief references to other alleged shortcomings in the hearing he was provided,[1] he did not set forth these arguments in his very brief discussion of his procedural due process property interest claim. [See plaintiff's brief at 17-18]. Once again, that section of his brief consists entirely of arguments relating to the impartiality, or lack thereof, on the part of the Board.

---

[1] For example, plaintiff asserts in his discussion of the facts that he "was not provided with the 'rules' in terms of how the hearing would be conducted," [brief at 7] but he provides no authority indicating that this alleged failure constituted a procedural due process violation. Plaintiff likewise offers no authority suggesting that a ninety-minute hearing is constitutionally deficient.

9

While it is certainly true that plaintiff was entitled to a hearing before an impartial tribunal, he offers no authority suggesting that the mere fact that the Board had previously recommended his termination constitutes sufficient reason to doubt its impartiality. Importantly, the U.S. Supreme Court has expressly rejected this notion, writing in a 1975 decision that:

> Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This applies to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' *In re Murchison, supra,* 349 U.S., at 136, 75 S.Ct., at 625; *cf. Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927). In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.
> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow v. Larkin*, 421 U.S. 35, 46–47, 95 S. Ct. 1456, 1464 (1975). The Supreme Court in *Withrow* further observed that it had previously rejected arguments that a prior recommend§§ation from a judge serving as trier of fact served to disqualify him from future proceedings, writing that:

> This Court has also ruled that a hearing examiner who has recommended findings of fact after rejecting certain evidence as not being probative was not disqualified to preside at further hearings that were required when reviewing courts held that the evidence had been erroneously excluded.

*Withrow*, 421 U.S. at 49, 95 S. Ct. at 1465, *citing NLRB v. Donnelly Garment Co.*, 330 U.S. 219, 236—237, 67 S.Ct. 756, 765 (1947).

It thus seems clear that plaintiff's arguments in this context are contrary to U.S. Supreme Court precedent, and they are likewise unsupported by any actual facts suggesting improper bias on the part of the Board. Indeed, this court notes parenthetically that the hearing practices in this case were in line with its experiences in other cases involving employment decisions made by municipal entities.[2] In this court's experience, many final employment decisions relating to municipal employees are made by Board of Aldermen, Board of Supervisors and other similar entities, whose members are generally elected by the public or are appointed by those who are. Under these circumstances, it strikes this court that these entities are entitled to a certain degree of presumed impartiality, and the Mississippi Supreme Court has held this to be the case. *Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District*, 515 So.2d 893, 898 (Miss. 1987)(holding that when a school board acts in an adjudicatory capacity there is a "presumption of honesty and integrity in those serving as adjudicators."). In the court's view, the mere fact that the Board had previously recommended plaintiff's termination constitutes insufficient reason to doubt its impartiality in evaluating the evidence at the hearing and deciding whether he should have, in fact, been fired. This court therefore concludes that his property interest-based procedural due process claim lacks merit and is due to be dismissed.

This court now turns to plaintiff's substantive due process claim, in which he alleges that his termination by the School Board was arbitrary and capricious and thus constitutionally defective. It is well settled that, while procedural due process focuses on the procedures the government must follow before it deprives a person of life, liberty or property, substantive due

---

[2] For example, this court very recently completed an FLSA retaliation trial in which a Board of Aldermen served both as decision-maker regarding certain employment matters and also considered appeals from those rulings. *West v. Holly Springs*, No. 3:16cv79, docket number 116, exhibit 4 at 45. Plaintiff made no allegation of any procedural due process violation in that regard.

process asks whether the government has an adequate reason for the deprivation. *McMullen v. Starkville Oktibbeha Consolidated Sch.*, 200 F. Supp. 3d 649 (2016). Thus, to demonstrate a violation of substantive due process in the public context, the plaintiff must show that his termination was arbitrary and capricious. *Id.* (*Citing Babin v. Breaux*, 587 Fed. Appx. 105 (5th Cir. 2015 )).

In its brief, defendant explains its decision to fire plaintiff as follows:

Taylor was terminated because of his failure to timely advise the Board of the severity and extent of the mistreatment of the student as reflected in the video and to properly investigate the incident. Taylor did in fact fire Winters-Johnson on October 11, 2016, but only after he had suspended Winters-Johnson for twenty-one days, effective October 5, 2016, the video went viral on October 6, 2016, and he appeared before the Board on October 10, 2016. Taylor's "investigation" of the events was concluded by October 5, 2016 when Winters-Johnson's twenty-one-day suspension became effective. Taylor only fired her after the video went viral and after a school board meeting to address the incident. There is no genuine issue of material fact that Taylor was fired not because he did not immediately terminate Winters-Johnson, but because of the way he handled the investigation into and his failure to advise the Board of, "the existence of the video and the magnitude of the misconduct committed" by Winters-Johnson. Defs.' Ex. 27.

Not only did Taylor fail to advise the Board, but he also failed to call the parents of the student subject to the abuse. Taylor offers no explanation for not contacting the parents. The Board's order upholding Taylor's suspension specifically cites as a reason for his termination that Taylor failed to call the parents of the special-education student, subject to the above. Plaintiff also claims that the Board's reliance on the "F" rating of the Greenville Public School District given by the Mississippi Department of Education was a mere "pretext" for his termination and presumably not the real reason. However, the School District received an "F" rating for school year 2015-2016. The "F" rating is not disputed despite Taylor's attempts to explain why the board should not have taken it into consideration. Defs.' Ex. 30; Defs.' Ex. 1, 56-57. The "F" rating was one of the factors that led the Board to fire Taylor. It is a real reason and not pretext.

[Reply brief at 2-3].

In considering the reasons for plaintiff's termination, this court is cognizant of the fact that, as discussed below, it is declining to exercise supplemental jurisdiction over the state law breach of contract claims which, in its view, constitute the proper legal grounds upon which to address the issues surrounding plaintiff's termination. That being the case, this court is hesitant

12

to make extensive observations regarding the wisdom of the Board's decision to fire plaintiff, since these issues will be litigated in state court. At this juncture, this court need only decide whether the Board's decision to fire plaintiff met the minimal standards of substantive due process, and it has little difficulty in concluding that it did. In so stating, this court emphasizes that defendant supported its termination decisions with multiple reasons, relating both to his handling of the Winters-Johnson incident and also the "F" rating received by the School District for the 2015-16 school year.

In his brief, plaintiff argues that one year's "F" rating should not have served as a basis for his firing, but he offers no authority suggesting that it was "arbitrary and capricious," in a constitutional sense, for the Board to consider this rating as one factor supporting his termination. Plaintiff argues that his contract did not allow him to be fired based on one year of test scores, [Plaintiff's brief at 5], but, this fact, if true, merely indicates that a state law breach of contract claim was the proper vehicle in which to raise such an argument. Clearly, the scope of the Fourteenth Amendment's protections are not determined by the provisions of plaintiff's contract, and this court believes that he would have been much better served by simply filing state law breach of contract claims in this context. An employee is certainly entitled to negotiate contractual rights to termination standards which go above and beyond that required by due process, but, when those provisions are breached, the proper recourse is to file a breach of contract action, and not a federal substantive due process claim.

With regard to the Winters-Johnson incident, defendants contend that, while plaintiff did provide some notice of the incident, he did not sufficiently convey its severity to the Board. Specifically, defendants argue that:

> Though Taylor sent the board attorney the video on September 23, 2016, Taylor only advised the Board that he was "investigating" an incident involving "brutal treatment" of

13

a pupil. No board member understood the severity or the significance of what was depicted on the video until it went viral on October 6, 2016.

[Defendant's brief at 5]. In his brief, plaintiff's only response to this argument is his assertion that he "communicated the alleged incident" to the Board, [Plaintiff's brief at 18] but this is not responsive to defendants' position. While the Board does not dispute that plaintiff notified the Board attorney of the incident, its position is that he should have informed the Board members personally, in a manner which alerted them to the gravity of the situation. Plaintiff offers no arguments or authority suggesting that the Board acted arbitrarily and capriciously in considering this to be one factor supporting his firing, indeed, his substantive due process arguments as a whole are extremely limited and, in the court's view, unpersuasive. Plaintiff's substantive due process claim will therefore be dismissed.

Having dismissed all of plaintiff's federal claims,[3] this court must now decide whether it should retain jurisdiction over plaintiff's breach of contract claims against defendants, which are asserted under Mississippi state law. In a case such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. Indeed, the Fifth Circuit has noted that the "general rule favor(s) dismissal of state claims when the federal claims to which they are pendent are dismissed," *See Guzzino v. Felterman,* 191 F.3d 588, 595 (5th Cir.1999). The court concludes that it should follow the general rule in this case. In so concluding, the court places significant weight upon the fact that Mississippi state courts have a strong interest in determining whether and under what circumstances the municipalities in this state should be held liable under

---

[3] Plaintiff's complaint makes brief reference to a First Amendment claim, but his brief made no attempt to rebut defendant's arguments in this context. This court regards defendant's arguments on this issue as compelling, and it agrees that any such First Amendment claims are due to be dismissed.

14

state law for allegations such as those in this case, particularly since these issues implicate the public coffers. Moreover, it is difficult to imagine a more quintessentially local dispute than this one, which involves the circumstances under which a local school board may terminate its superintendent for cause under Mississippi state law.

Section 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This court notes that the four § 1367(c) factors are listed in the disjunctive; only one of them need be met in order to grant a district court discretion to exercise supplemental jurisdiction. In addition to these statutory factors, federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

This court concludes that each of the four statutory factors, as well as the *Cohill* considerations, support declining to exercise supplemental jurisdiction in this case. With regard to the first factor, this court concludes that the state law claims in this case involve difficult issues of state law which are heavily based upon public policy considerations which are of local, rather than federal, concern. While plaintiff's state law cause of action for breach of contract is not, in and of itself, difficult, it becomes quite difficult based upon the arguments which he asserts in this case. In his brief, for example, plaintiff argues that:

> [B]ased on Defendant Shannon's testimony, Plaintiff breached his contract due to: (a) neglect of duty; (b) any "other good cause" for which a Mississippi public school district licensed employee could be terminated pursuant to Section 37-9-59 of the Mississippi Code Annotated of 1972, as amended; (c) gross negligence; (d) failure to achieve, or make substantial progress towards the achievement of assessment

15

> components of Section 37-7-301(pp) of the Mississippi Code Annotated of 1972 and (d) any valid educational reason. However, Plaintiff contends that these terms are ambiguous and as such, genuine issues of material fact exist. Plaintiff further contends that the term regarding due process is ambiguous.

[Plaintiff's brief at 14].

Based merely upon this one paragraph of plaintiff's brief, this court can discern multiple public-policy based issues as to which plaintiff offers no prior Mississippi appellate court precedent on point. That means that resolving these issues would, in all likelihood, require a court to make a number of novel interpretations of Mississippi law. In the court's view, Mississippi state courts have a strong interest in interpreting Mississippi statutes relating to the performance standards of their public school employees, and this constitutes a strong factor in support of allowing them to decide these issues. Moreover, Mississippi courts have much greater experience in applying state law than this court, and only the Mississippi Supreme Court has the authority to make new law in this context, with no need for *Erie* guesses. With regard to the second § 1367(c) factor, this court concludes that the state law claims predominate in this case, as evidenced by plaintiff's own brief, in which he provides considerably more extensive discussion of his breach of contract claim than of his federal claims. Moreover, the third § 1367(c) factor is plainly met in this case, since this court has dismissed all of the federal claims which plaintiff asserted in this case. Finally, this court concludes that the comity factors discussed above constitute "exceptional circumstances" within the meaning of the fourth § 1367(c) factor, and they likewise support a conclusion that the *Cohill* factors are met.

In the court's view, the only consideration which arguably supports retaining supplemental jurisdiction lies in the fact that this case has been pending in federal court since April 2018 and that it is soon set to be tried in this court. However, this court believes that these facts are the result of plaintiff's decision to assert federal law claims which lack any validity.

At its heart, this case is one in which a Mississippi superintendent is suing a Mississippi school district for breach of contract under state law. While plaintiff chose to assert federal law claims in this case, this court does not believe that he had any reasonable basis for believing that those claims had any merit. As discussed previously, plaintiff requested a hearing in this case pursuant to the requirements of his contract, and he was given a hearing which was consistent with that contract. Even before that formal termination hearing, the Board conducted extensive hearings and investigations of plaintiff's actions which, in this court's view, are not indicative of a governmental body which is acting in an arbitrary and capricious manner. Under these circumstances, this court can discern no reasonable basis for plaintiff to have asserted federal due process claims, and, that being the case, he bears the responsibility for this case's time-consuming detour into federal court.

In light of the foregoing, plaintiff's federal claims asserted in this case are hereby dismissed. This court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and those claims are hereby remanded to the Circuit Court of Washington County.[4]

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 9th day of July, 2019.

---

[4] *See, e.g. Cohill*, 484 U.S. at 353 (holding that federal courts have "wide discretion to remand [previously removed] cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate."); *Riggins v. City of Indianola, Mississippi*, 196 F. Supp. 3d 681, 698 (N.D. Miss. 2016)(remanding removed case to state court upon dismissal of federal claims); *Kermode v. Farley*, No. 3:09CV584-DPJ-FKB, 2014 WL 12704991, at *8 (S.D. Miss. Feb. 14, 2014)(same).

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI